May it please the court, counsel, Mr. Lowry. I'm Timothy Lowry, here on behalf of Cellular 101 and Patrick Lowry. I would like to preserve, reserve five minutes for my rebuttal. Your Honors, essentially, Patrick Lowry and Cellular 101 would like their day in court before the BAP on the merits of this affirmative defense. Our request for relief is that narrow, and based on the precedent of the Ninth Circuit and even the U.S. Supreme Court, we believe that our approach in this case with regard to that affirmative defense was the right course. Obviously, with 20-20 hindsight, we'd like to be able to call up the Ninth Circuit and say, well, what should we do about this? But relying on precedent, which was before us, we think we took the appropriate course. This is an appeal, or excuse me, this is an affirmative defense that arose and was signed off on after the prior case was fully briefed. And it involved, it would have involved developing a factual record and Well, if this had, if the settlement had come up before it was fully briefed, would you have had an obligation to disclose it? I think we would still have an obligation to follow the Singleton case and Briggs case, which sets forth when new matters can be raised on appeal for the first time. I think we would have to follow that precedent, you know, regardless. And it would take development of a new record. And as the BAP had indicated, probably turn on the Hurley case as to how much the parties knew about the settlement and would they account to one another. You know, that kind of thing. So it would take Well, if it had happened prior to briefing and it mooted out that particular matter, would you have had an obligation? Again, I think we would have had to follow the precedent in Singleton v. Wolfe. Do you think there was any risk of being sanctioned if you had brought it to the attention of the Court that, you know, this case may be done because it's been settled? You can talk about following the rules, but I really don't see a downside of letting the Court know what's happened. Well, Your Honor, you know, quite frankly, the thought process at the time, my understanding is from the attorneys, is that they thought it would be frivolous to bring new matters requiring development of a new factual record for the first time on appeal. I think it's an Of course, the alternative is the way the Court looks at it is it was an exercise in gamesmanship, giving an attempt to get two bites out of the same apple. Right. And I think that's really a misconception that was developed first at the trial court level. Mr. Lowry would have had two defenses, and it would have been preferable for him to raise it earlier at the appellate level. It would have been preferable for him to get the $200,000 four years ago. Well, now I'm really bothered because it would have been preferable for the Court to have known about it. It would have been preferable for your client to have known about it. So what's the problem with alerting the Court to it, letting the Court tell you what to do? Again, you know, with 20-20 hindsight, you know, if we had heard comments like that, I think that we would have. Well, but now we're in that situation, and now maybe this is where hindsight comes back to haunt you because I have a hard time understanding what's the downside at the time of alerting the Court. I see a real big downside of not alerting the Court, and that's the problem you may be faced with here because it may have been a nonmalicious judgment, but it was a judgment that let your client make the decision rather than the Court. And I don't know that that's the way the Court wants you to approach these things. I mean, we've now had a published decision that was prepared, a Court that had to work on a case that probably wasn't appropriate to be decided, at least as your perspective, your argument is, because the case had been settled. And for the party to hang back and say, well, we're going to take our chances. If we win this argument, great. If not, we've got another card to play. I mean, that's really how it looks from this perspective. I don't know how it was that it was actually thought through, but from this perspective, it sure does look like the gamesmanship that Judge Callahan alluded to. I've obviously heard that before, read that before, and again, I would say Mr. Lowery had no incentive to wait. I'll be right back. He sure did. He had two bites at the apple. But he would have had two bites at the apple anyway. He would have had he could have, great. Well, I think he would have had one integrated bite if you had notified the Court, and that's different than two bites. Well, one integrated bite with two issues where he could possibly win, yes, but the effect is the same. He had two ways to win. It would have been preferable to raise it earlier, all things being equal to him. He would have had his money four years ago if he won. It would have been preferable. And we wouldn't be here today. We'd be hearing another case because the first panel would have done whatever it had to do. So it's not hard to say which is preferable from our perspective. We don't know what that panel would have done with this issue on the merits. So I don't want to speak for this Court or for the prior panel. All I can tell you is there was a good faith effort here to follow the law, and the law is pretty clear in Singleton. There are only three exceptions when you can raise new matters on appeal. We didn't fall into any of those exceptions. And, again, he would have much preferred to win this case four years ago, get his money four years ago, you know, bring the matter up four years ago with one integrated appeal, two issues. That would have been easier, the easier road for him. But in their judgment at that time, they said, you know, we can't raise new matters on appeal. There are strict limits on when you can do that. This case doesn't fall into that. I think we get not to beat a dead horse, but we get letters all the time saying this matter is under consideration for potential settlement. We're advising the Court. And then we usually say, well, okay, fine, we'll wait to see what happens. I mean, those come in all the time. The difference in this case is we knew, given the history in this case, and you can see it in the briefs in this case, it still was a hotly contested, would have been a hotly contested matter as to whether the case settled, based upon the contract with AT&T and Channel, and based upon the subsequent contract between Cellular 1 and 1 and Lowry and AT&T. So this is not the kind of case where it was a fait accompli that it was settled, that everybody agreed to that. We knew that there would have to be a detailed factual record developed, and we certainly predicted correctly that it would be contested. And you can see here in the briefs that it was. They have never conceded that they would have been, that they were bound by the effective action. Well, here the parties are John Price and your client, right? Correct. All right. And the settlement involved AT&T and your client, right? There was a settlement, or a buyout in the settlement, releases between AT&T and Channel. Price was a shareholder selling 80 percent of his stock for $16.5 million, and for that he allowed AT&T to negotiate on his behalf, and certainly as to all matters regarding Channel. Subsequently, AT&T buys its piece with Mr. Lowry. Let's say if the parties here were AT&T and your client, as opposed to Price and your client, would Price then, I mean, would AT&T have had an obligation to tell the court about the settlement between the? If AT&T was a party. As opposed to Price. As opposed to Price. There are so many variables with that hypothetical, I'm having a hard time saying precisely what AT&T. Well, it just seems to me, clearly if it were the two same parties and there had been some side settlement, I don't think we'd be arguing about whether the court should know about that. Price, however, you know, so, but Price is in a different position on that, so I don't know that we could put him in the same, you know, position. And so, you know, I'm trying to think about if the rule is after things are briefed that, you know, if this court were to go into place to say that the rule after that, that the parties do have an obligation to inform the court of relevant, why would that be a bad rule? Well, and. In order so that parties aren't in, you know, deciding do I tell them, do I don't tell them, you know, should I employ myself in gamesmanship or not, or, you know, what's the. I mean, if the rule were that you had to and that your client were under an obligation, then, you know, you wouldn't have to be deciding whether it was a good or bad thing for your client to tell it. You would just have to. You'd have an obligation. I could appreciate that, but we had to deal with the precedent that existed. Well, let's try this. A precedent that exists, a 1997 decision from the U.S. Supreme Court, Arizonans for Effective English v. Arizona. Quote, it is the duty of counsel to bring to the federal tribunal's attention without delay facts that may raise a question of mootness. Why doesn't that precedent apply here? As I recall, Arizona, that was the case where there was a company that went out of business, and the court found it speculative to think that there could even be a controversy. And that's why they had the obligation based on those facts. And, again, in this case, we knew we had a defense to raise, but we had a long, hard road to go. We had to develop a record. And so that's why it's distinguishable from the Arizona case. What did the bankruptcy court rule in this case regarding your claim? The bankruptcy court did not reach the merits of the settlement, or the affirmative defense of the settlement, and instead said that we were bound to bring it to this court's attention earlier. And so based on that procedural ruling, we believe the appropriate remedy here is remand to the BAP to sort through the issues. And you're talking about what the BAP ruled or what the bankruptcy court ruled? Oh, I'm sorry. The bankruptcy court ruled on the merits, saying that we should have brought it to the Ninth Circuit's attention, saying that because of the timing of the agreements, Price wasn't bound to it, and I believe that he wasn't a signatory. So it ruled on its view of the merits as well as this procedural issue, the BAP that limited it to the procedural issue. I believe the bankruptcy court did rule on the merits and threw in that we should have raised it earlier. However, the BAP did not. I thought the bankruptcy court did rule on the merits. Why don't we have the authority to cut to the chase and review what the bankruptcy court did? Well, based on the precedent, Modo and I believe it was Arrowhead, where the BAP makes a decision based on a procedural defect, and if the BAP is wrong, the correct remedy is remand to the BAP to sort through those issues. Is that the exclusive remedy? It's the only remedy that I have seen based on these specific facts where you have, you know, the bank, the BAP, you have they're charged with reviewing the merits of it, and this Court has stated previously that it's not equipped to rule on cases where the facts haven't been fully developed. Well, the bank, the BAP wasn't going to develop facts. Well, we'll sort through the facts, I should say. Sort through the facts, develop a record. That would be a better way to say it. The record's been developed. We're taking a look at what the bankruptcy court did in the first instance, aren't we? But the problem is that... Eventually, that's what you want to get to. Now you want the BAP to take a look at what the bankruptcy court did, and then we'll hear it again from there probably. Depends on how the bank... Why don't we have the authority to cut through and look at the merits of this, as did the bankruptcy court, and review that? Well, again, the cases that I've seen that are closest to this, you know, certainly state that the appropriate remedy is remand to the BAP. And this Court has previously stated it's not in a position to be going through a record where the record isn't fully developed. There's a lot of probably testimony that, well, excuse me, if it ever gets remanded back to the trial court level, we would be looking at perhaps testimony. But there simply isn't enough of a record here for you to adjudicate that. Essentially, with my minute and a half left before I close, the law clearly favors decisions on the merits. The law clearly favors settlements. And we're simply asking this Court to do what it's done in previous cases, which is if the BAP makes an error based on its perception of proper procedure, that it be remanded and that the BAP be allowed to sort this case out. Thank you very much. Thank you. I hear from opposing counsel. Good morning. I'm Kenneth Roberts on behalf of the Respondent, John Price, this morning. I'm going to focus on a couple of questions that were asked towards the end and then the question was raised, does this Court have the ability to, in fact, as was said, cut to the merits and actually review it on the merits if it were to choose so? I would have to believe so because all parties have agreed that whatever the decision of the BAP is, this Court has de novo review power. So with that de novo review power, one can cut through all of that if the Court were to choose to do so and make that decision. It doesn't necessarily have to send it back to the BAP to decide it first. It has full and complete de novo review power. Do you have any cases that say that? Because I'm looking at Moldo v. Ash and it says, remand is the appropriate remedy when the BAP erroneously fails to address the merits of an appeal of a bankruptcy court's judgment because of perceived procedural bar. No, Your Honor, other than just the general standard of de novo review, I don't have any specific case that addresses that point. I'll be candid with that. We come to the additional questions, though. In this particular case, what the BAP said was, we have to look, I think, very specifically to the language of what the BAP said was. They said you failed to raise the issue of the possibility of a defense, of a defense. Well, the BAP still got it both sides of its mouth. It's hard to tell what the BAP was saying because it seems to have switched gears in the middle of the stream. Well, it specifically says, having failed to raise settlement defense, it waived the argument. So it specifically said, having failed to raise the settlement defense. In the context of this case, it's not disputed that John Price was not a party to that settlement agreement. It's not disputed that that settlement agreement was confidential and secret by its terms, not to be disclosed to anyone, including John Price. One questions why it was not raised before the court of appeal. My hypothesis is it was not raised because the parties understood it wasn't applicable to Mr. Price and it was confidential. We have other excuses now coming forth, none of which are supported by affidavit, which one would expect to say, oh, well, gee, we were doing all of these things. None of that's supported by affidavit. So we know he's not party to the agreement expressly. We know that he benefited from it. No. He was not a party to the litigation. What did he lose as a result of the agreement if the agreement should be held to cover him? What does he lose? What does he lose? On their application, he loses $209,000. He loses his award of attorney's fees. He receives no benefit. He was not a party to the lawsuit. That was a lawsuit by Lowry against AT&T for interference with business. Channel Communications was not a party to that lawsuit. John Price was not a party to the lawsuit. When it was subsequently executed, it said it was going to be applicable to AT&T and its subsidiaries. Channel was identified. Price is nowhere identified in the lawsuit or the settlement agreement. Who was the beneficiary of the attorney fee award? Price. Just Price or Price and Channel both? It says Price and Channel both. But this court of appeal previously has said that Price paid the money, Price presented the plan, and Price is entitled to the award of attorney's fees. And that was decided the last time this case was before. So this Court specifically decided Price is entitled to those. Price is distinguished from Channel? Channel wasn't here last time. It was solely Price that was here at that time. So Price put out, what, $2 million for the reorganization? That's right. And then the actual award of $495 was reduced to $200 and something, right? That's correct. Okay. And Price is the one that will benefit. Channel will not benefit from it one iota. Now, with respect to this whole issue, however, the reason that I have to stop you, because I'm looking now at the prior Ninth Circuit decision, and I thought I recalled the decision constantly saying Channel and Price, Channel and Price, and that appears to be what they say. That's right. I don't dispute that you said Channel and Price, but Price is there as well. Well, sure, but how does that tell us that it's all Prices, it's not Channels? It doesn't. Well, that's really, I apologize, maybe I wasn't clear. That's the question I'm posing. I mean, your premise now is that Channel had nothing to do with it. In fact, I think you used those very words. And yet what I see is you've got an award to both Channel and Price. So how do I know that it really belongs to Price and none of it belongs to Channel? Channel is not making any claim and does not stand here before this Court seeking those fees. Well, because Channel, now controlled by AT&T, has entered into a settlement agreement with everything it had outstanding. That could be. I don't know why it made its decision not to pursue. So why is it all Prices? I mean, maybe it was all Channels and Price's name was on it. You're telling me it's all Prices and Channel's names on it. Has that issue ever been resolved? No, that issue has not been resolved, nor has any claim for it been made by Channel. But if it was Channels, Channel wouldn't be making a claim because Channel's parent has entered into a settlement agreement. It's all through the process. Channel has not. But I understand. Has the money at issue been paid to Price? Yes. A long time ago. And there was no application for a stay. What? And there was no application for a stay on that at all after that was ordered? Nope. No bond posted, nor the proceeding conducted. We made the application. The application was awarded. There was no bond posted. There was no application to any court of appeal above to try and stay that award. The money was released. And that's been years ago at this point in time. I see the order to disperse fees was entered in February of 2005, so I presume it was three years ago. That's correct. The reason that I focus, though, on the language of the court saying that they failed to raise the issue of the settlement defense is mootness is really a two-pronged analysis here. In this case, mootness is a two-pronged analysis because it can only apply through application of Civil Code Section 1475. One must first decide whether or not Price is even a party to that settlement agreement before one ever gets to the issue of deciding mootness. And that defense is what Baff said was waived. You failed to raise the issue of 1475 and the application, the potential defense of a settlement agreement. One never even gets to the issue of mootness. So to a great extent, I challenge the question of saying mootness is never waived because the Baff did not say it's moot. The Baff did not discuss it in terms of that. Its specific words were, having failed to raise settlement defense, that it waived the argument. Now I'm looking at the Baff decision, and it doesn't avoid the word mootness. I mean, they're talking about the obligation of cellular to bring the issue up, and it says cellular, the appellant, therefore, had an obligation to bring the mootness of the appeal to the attention of the Ninth Circuit. So, I mean, it's not ñ I'm getting an unfortunate pattern here. You told me what the previous Ninth Circuit panel had decided, and that didn't turn out to be the case, and you're now telling me what the Baff decided, and that doesn't seem to be the case either. Well, I'm reading from the excerpts of record of page 206 where the Baff stated, Well, I'm on 204. So the word mootness applies to 204, and my God, top of 206, the first line is the word mootness. And then they go on in saying, having failed to raise the settlement defense in the prior appeal when it had an obligation to do so, cellular waived the argument. Well, I don't think the Baff is treating those two separate things. Okay. The Baff may not have been treating it, but the issue still remains. The argument that I'm presenting is that the issue of the settlement defense is a separate and distinct question from that of mootness. One does not even get to the issue of settlement of mootness until one hurdles 1475 of the Civil Code. And that is what I am saying. They had an obligation to have presented before, and indeed, in their own brief, in the heading on their own brief, they state they could have done so. And yes, people all the time do things subsequent to briefing, or events occur subsequent to briefing, and the courts have very clearly said there is an obligation to bring it to the attention of the Court of Appeal so that something can be done at that point in time. What would have been done by the Court of Appeal possibly at that point in time? Possibly what the Court of Appeal would have done is not decide whether this settlement agreement applies or doesn't apply. It would have said, we're going to stop right here and send everything back because there is a defense, being Civil Code section 1475, that the settlement agreement should apply here as well. There is a defense as to the potential claim as to Mr. Price on that basis. That was taken away from the Court. That was taken away from Mr. Price, who was not even knowledgeable of this settlement agreement, had no notice of it. It was a confidential document. And so, yes, no one disputes it was a joint award. No one disputes that fact. No one disputes that the BAP and other courts have discussed and used the words mootness. No one disputes that Mr. Price is not a party to the agreement. No one disputes that it was a confidential. And what I am suggesting to this respected Court is that it's when one, when Lowry chose not to raise this issue, he ran the risk because it wasn't mootness that he was to be raising at that time. It was Civil Code section 1475. I have a potential defense pursuant to Civil Code section 1475. He failed to raise that issue until after it came down, until after we had to go to the Court and apply for the award of fees, whereupon the trial court ruled on the merits as to the entire matter. Indeed, if you look at their appellate opening brief, their statement of the issues, they describe all the issues as being those that were ruled upon on the merits by the trial court, by the bankruptcy court. They've only briefed mootness. The trial court then ruled on the merits, and now we've come back through this process. So with all due respect to appellant and their concern about how do we raise this issue, the easiest question and the easiest process, knowing that the strong duty that stands to raise issues that may affect the appellate process, was to have raised it so that we wouldn't be going through this circular motion of thousands of dollars of fees, of additional burdens on this Court as well. Simple process of saying, I believe I may have a defense under Civil Code Section 1475. That they failed to do, and that I think that the BAP, properly when it actually made its pronouncement of its decision, when it used the words, having failed to raise the settlement defense in the prior appeal when it had an obligation to do so, cellular has waived the argument. And we believe that is not, we're still a step away before we ever get to the question of mootness. Submitted. Thank you for the argument. Bravo. Again, I'll reiterate, I'm trying to see what advantage there is to waiting, that this perceived sinister intent or gamesmanship, it would have taken this Court time to review this issue four years ago. It takes time for this Court to do it now. Well, the sinister part about it is, as courts, the concerns that courts have are that people that, it's sort of like when mom tells you no when you go to dad. It's the divide and conquer approach to things, and trying to give one, you know, give different judges little slices of things, but no one really knows what the whole picture is. That, you know, courts are obviously, you know, courts do see that as trying to, you know, work around or get something. Well, you know, maybe you don't like one of the judges, and you see that in another situation that it's possibly a more favorable venue. I know people shake their heads about that, but those of us that have been judges a long time know that, you know, and that people that know how maybe, you know, not, you know, we're not all the same, you know, and people view certain environments as more favorable to them as others. So there is a lot of gamesmanship that goes on when, you know, attorneys try to pick, you know, they try to, you know, control everything that they can, and that can include the judge. And if they can have more than one judge, and they can divide and conquer, and we don't know everything that everyone else is doing, you know, sometimes you can get, you know, you can get a better result somewhere else. And I appreciate that. And I think if you look at the totality of circumstances, that would require him to project that somehow the prior judges wouldn't look on this settlement defense favorably, and that four years later we would get a panel that would. And, again, why not try to collect his money four years ago if he could? And the reason is, you just, you know, following Singleton and other precedent where the courts have spoken to us, it's, you don't want to imagine. Let me ask you to turn it around. Put yourself in the position of whoever made this decision four years ago. What do you think the court would want to have happen? I would expect the court to do what it's done before, which is say, we don't have a fully developed record here. This is going to turn on facts. What Mr. Lowery knew about how they should account, or what they can prove Mr. Lowery knew about how AT&T and Channel would account to each other. And I think it would make the best. The court would rather have you make that decision or it make that decision, how it's most efficient to proceed. Again, I can't speak for the court. I can only. We can. I know you can. And I have to say that it's hard from a court's perspective not to say it's far more efficient to let the court arrange for itself and make its own decisions with regard to how best to proceed with the case. And instead what's happened here is that whoever made the decision expropriated to himself that option. And that's the problem we face today. Right. And I can appreciate that, Your Honor. And again, if you look at the totality of these circumstances, and if you favor rulings on the merits as it's been stated before in this Court, and if settlements are a favored procedure, you should give Mr. Lowery's day in court with the bat to flesh it out. What are you trying to recover? Specifically, what are you trying to recover for Mr. Lowery? The payment of approximately $209,000. That's what this case is all about at this juncture, $209,000? That is the money amount that we are seeking. Yes, roughly. $209,000 paid off. That was, if I hear correctly from opposing side and if I read correctly from the record, that was dispersed three years ago without objection, without request for a stay. Is that also true? It was dispersed. I mean, after Judge Riblett overruled or ruled against us, it was dispersed. We did not attempt to stay. Enforcement, Mr. Price, we knew had $16.5 million. We think that that money will be there should the BAP rule in our favor or ultimately we get a favorable ruling on this. So we're not concerned about him not having $200,000. This seems like an awful lot of litigation for $200,000 based on what I know lawyers charge. Right. Well, I'm sure Mr. Lowery would prefer not to have spent that money, but again, he believes he does have a good affirmative defense to raise here, and that is, you know, the choice he has made to. How do you visit against Mr. Price the consequences of the settlement agreement to which he was not a party and which was confidential? Well, he gave away his rights to negotiate when he settled with AT&T for $16.5 million, particularly as to claims involving Channel. And so I don't know how he can complain about that when he got a lot of money, he allowed Channel to run his business as it concerns claims involving Channel, and then when AT&T exercises that option, which it paid for the right to do, he shouldn't be too surprised. And I don't have the record in front of me, but certainly I can't imagine that any private contractual agreement could prevent a party from filing documents in court to assert its contractual rights. And again, I don't have the site in front of me or the page in front of me, but I thought that there was a right to enforce the agreement or certainly to file it in court. Do you have an understanding from the record or otherwise as to who properly owns the award? I don't. That is, the Attorney Fee Award was made to Channel and Price. And so far, at least, I haven't found anything in the record that distinguished amongst them or explained as between the two of them, which are now separate entities, really gets it. Well, originally the claim, as the Ninth Circuit said before, was brought by Price and Channel. And it's clearly, it's clear it was joint. It was originally presented below as a joint claim. And I think once they saw this affirmative defense, they withdrew Channel's claim and just made it Price. So I believe Price was paid the $209,000. What he did with it after that, we don't know. And again, in my last 22 seconds, I'll ask this Court to look at the totality of circumstances, look at that Mr. Lowery had no reason to disrespect this Court or waste this Court's time. He would have preferred to get his money four years ago. The Court favors settlements. The Court favors adjudications on the merits. Remand is the appropriate remedy based on the clear cases of this Court. And again, based on the narrow exceptions as to when new matters can be raised on appeal, Mr. Lowery was respectfully following the law, not raising new matters on appeal where a record had to be developed, a factual record had to be developed in order to assert his claim. Thank you. We thank you. We thank both counsel for the arguments. The case just argued is submitted. And we decide if you would like to take a break. Then we'll move to the last case on the calendar for argument today, United States v. Able Time, Inc.
judges: Trott, Clifton, Callahan